**SIGNED THIS: December 20, 2005**

_____
**THOMAS L. PERKINS
UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ROBERT JOHNSON and ) | |
| JOLENE JOHNSON, ) | No. 04-83665 |
|               Debtors. ) | |
| ) | |
| ) | |
| RICHARD E. BARBER, not personally, ) | |
| but as Chapter 7 Trustee for the Debtors, ) | |
|               Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No. 05-8034 |
| ) | |
| FIRST MIDWEST BANK, ) | |
|              Defendant. ) | |

### O P I N I O N

This matter is before the Court on the Motion for Summary Judgment filed by the Plaintiff, Richard E. Barber, as Chapter 7 Trustee ("TRUSTEE") in the bankruptcy proceeding filed by Robert and Jolene Johnson ("DEBTORS"). The TRUSTEE seeks summary judgment on both counts of a two count complaint filed against First Midwest Bank ("BANK").

The facts are sparse, neither party having filed any affidavits, deposition transcripts or other documents offering evidence in the form of testimony. In 2003, the DEBTORS borrowed $313,000 from the BANK secured by a "Construction Mortgage" on certain real estate commonly known as 2307 5th Avenue, Moline, Illinois. In conjunction with the loan, the DEBTORS opened a savings account at the BANK, which the BANK characterizes as an "escrow" account, attaching documents that describe the account, variously, as "Escrow," "Business Acct." and "Int. Reserve." The account was funded with a deposit of $22,690. The TRUSTEE does not concede the BANK'S characterization of the account.

The DEBTORS subsequently defaulted on the loan and entered into an Agreement for Deed in Lieu of Foreclosure with the BANK dated February 27, 2004. On that same day, the DEBTORS transferred title to the mortgaged real estate to the BANK by Quit Claim Deed. On May 13, 2004, the BANK issued its "Official Check" payable to the order of "Robert C. Johnson" in the amount of $10,053.90. The parties agree that this check represents the full balance remaining in the alleged escrow account as of that date. At some point thereafter, the check was presented for payment and payment was refused by the BANK.

The DEBTORS filed a Chapter 7 petition on August 13, 2004. In Count I, the TRUSTEE alleges that the payment refusal was wrongful, contending that since the check was either a "Cashier's Check" or a "Teller's Check," an issuing bank has no right to refuse payment and the BANK is liable for statutory damages under 810 ILCS 5/3-411. In Count II, pleaded in the alternative, the TRUSTEE alleges that the BANK owed the DEBTORS, as of the petition date, the account balance of $10,053.90, that the obligation became property

2

of the estate under Section 541 of the Bankruptcy Code, and that the BANK may be compelled to pay the funds to the TRUSTEE under Section 542(b).

The BANK denies that its refusal to pay the check was wrongful and alleges that the DEBTORS waived their rights to the account funds in the Agreement for Deed in Lieu of Foreclosure. The BANK further denies that the funds are property of the estate that now must be turned over to the TRUSTEE.

Summary judgment may be granted upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Bankr.Pro. 7056(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Only if the movant carries the initial burden does the non-movant then assume the burden of setting forth specific facts showing the existence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The evidence of the non-movant is to be accepted as true and all justifiable inferences are to be drawn in his favor. 477 U.S. at 255, 106 S.Ct. at 2513. A fact is material if it will affect the outcome of the suit. 477 U.S. at 248, 106 S.Ct. at 2510.

Section 3-411 of the Uniform Commercial Code, dealing with a bank's refusal to pay cashier's checks and teller's checks, provides as follows:

> (a) In this Section, "obligated bank" means the acceptor of a certified check or the issuer of a cashier's check or teller's check bought from the issuer.
>
> (b) If the obligated bank wrongfully (i) refuses to pay a cashier's check or certified check, (ii) stops payment of a teller's check, or (iii) refuses to pay a dishonored teller's check, the person asserting the right to enforce the check

is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages.

(c) Expenses or consequential damages under subsection (b) are not recoverable if the refusal of the obligated bank to pay occurs because (i) the bank suspends payments, (ii) the obligated bank asserts a claim or defense of the bank that it has reasonable grounds to believe is available against the person entitled to enforce the instrument, (iii) the obligated bank has a reasonable doubt whether the person demanding payment is the person entitled to enforce the instrument, or (iv) payment is prohibited by law.

810 ILCS 5/3-411. Under subsection (b), the TRUSTEE must prove that the BANK'S refusal was wrongful. Under subsection (c), damages are not recoverable if the BANK'S refusal to pay was justified because it has a defense to payment against the person entitled to enforce the check, i.e., the person presenting it for payment.

To the extent that the TRUSTEE argues that an issuing bank may *never* lawfully refuse to pay or stop payment on a cashier's or teller's check, that position does not hold water. UCC Section 3-411(b) uses the modifier "wrongfully" with respect to refusing to pay a cashier's check or stopping payment on a teller's check, a clear indication that some such refusals may be rightful or justified. Accepting the TRUSTEE'S argument would render the term "wrongfully" meaningless surplusage. The commentary to Section 3-411 supports this conclusion. It provides, in part, that "[s]ubsection (b) applies only if the refusal to honor the check is wrongful. If the bank is not obliged to pay there is no recovery."

The question then becomes under what circumstances is a bank justified in refusing to pay a cashier's or teller's check?[1] The answer to that question is that a bank may be

---

[1] For purposes of this Opinion, this question is considered only in the context of a bank's obligation vis-a-vis the payee of the check and not as to a collecting bank or a holder in due course.

4

justified in stopping payment on a cashier's or teller's check in cases of error or fraud. *See, Foreman v. Martin,* 6 Ill.App.3d 599, 286 N.E.2d 80 (Ill.App. 2 Dist. 1972) (with no controlling authority, accepting the possibility of error and fraud as valid defenses); *Bank of Naperville v. Catalano,* 86 Ill.App.3d 1005, 408 N.E.2d 441 (Ill.App. 2 Dist. 1980) (permitting restitution of the amount of a cashier's check issued and paid by mistake). *See, also,* Henry J. Bailey & Richard B. Hagedorn, *Brady on Bank Checks: The Law of Bank Checks* ¶ 26.12 (rev. ed. 2005) (collecting cases permitting banks' refusal to pay cashier's check). Therefore, if the BANK had a valid justification for refusing to pay the check, which would be in the nature of facts demonstrating that Robert Johnson was not entitled to the funds, its refusal would not have been wrongful.

The cases cited by the TRUSTEE are inapposite. *Bank One, Merrillville, NA v. Northern Trust Bank/DuPage,* 775 F.Supp. 266 (N.D.Ill. 1991), holds that a drawer bank had no right to dishonor its cashier's check when presented for payment by a collecting bank, even though the drawer alleged that the check was obtained by the fraud of its customer. Without question, an innocent party like a collecting bank that accepted the deposit of a cashier's check and made the funds immediately available to the depositor, is and should be protected by the rule against nonpayment of a cashier's check. In the case at bar, however, no intervening innocent holder is present. The dispute is a direct one between the drawer bank and its customer who is alleged not to be entitled to the funds.

Likewise, in *Munson v. American Nat. Bank & Trust Co. of Chicago,* 484 F.2d 620 (7th Cir. 1973), the purchasers of two cashier's checks upon which payment had been stopped were innocent parties. The court held that the issuing bank's refusal to pay the checks was

wrongful as to them, even though the bank had a right of recourse against a third party who had passed a bad check upon which the issuance of the cashier's checks was premised. The general principle espoused in these cases is that when the holder of a cashier's check is an innocent party, the issuing bank must pay the check and then seek recourse against the culpable party.

Similarly, *Able & Associates, Inc. v. Orchard Hill Farms of Illinois, Inc.,* 77 Ill.App.3d 375, 395 N.E.2d 1138 (Ill.App. 1 Dist. 1979), involves a three party transaction and supports the proposition that a bank that issues a cashier's check may not thereafter refuse to pay it when an innocent party is the holder. None of these cases involve the type of two party transaction that is before the Court. No third party is involved. There is no allegation that Robert Johnson negotiated the check to anyone else or deposited it with a different lending institution for collection.

As best the Court can tell from the meager factual record, the BANK issued a teller's or cashier's check to Robert Johnson and his attempt to cash it at the BANK was refused on the basis that he had no right to the funds. Whether he had or didn't have a right to the funds should be decided on its merits and that decision will determine the TRUSTEE'S interest, if any.

With respect to entitlement to the funds, the record at this stage is blank. That issue of fact is material and disputed. Specifically, there is no evidence of what either party intended with respect to the account funds when the Deed-in-Lieu transaction occurred or thereafter. The funds are not addressed in the Contract for Deed in Lieu. The Court agrees with the BANK'S position that acceptance of a Deed in Lieu of Foreclosure does not, as a

matter of law, preclude it from exercising its rights in other collateral, such as an account on which it holds a lien.  Of course, if the BANK made an agreement with the DEBTORS that they would receive the account balance, and then reneged, its nonpayment would be wrongful.  At this point, the Court cannot determine whether the BANK agreed to return the funds to the DEBTORS or whether the DEBTORS agreed that the BANK would apply the funds to the debt.  Both scenarios are plausible and neither is precluded by the Deed in Lieu.

Further, no evidence has been presented concerning the circumstances surrounding the issuance of the check.  Did the DEBTORS request it?  If so, what was said? Was the decision to issue the check made by a teller without consulting a bank officer, or was it made at a higher administrative level?  Who made the decision to refuse payment and why? These questions are material and unanswered. Summary judgment must, therefore, be denied.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###